UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PETER PAPE & JONATHAN SCHENK,

           Plaintiffs,

    -against

DIRCKSEN & TALLEYRAND INC. (d/b/a THE RIVER CAFÉ) and LUKE VOSSEN,

        Defendants.

No. 16-cv-5377 (MKB) (PK)

---

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. PROC. 56**

---

Christine L. Hogan
Craig R. Benson
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

*Attorneys for Defendants*

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 1

    I.     Background ................................................................................. 1

    II.    Plaintiff Schenk's Hire and Rapid Termination ................................................ 2

    III.   Plaintiff Pape's Hire and Ultimate Job Abandonment ........................................... 4

ARGUMENT ....................................................................................................... 6

    I.     The Standard for Summary Judgment ................................................... 6

    II.    The Court Should Grant Summary Judgment on Plaintiffs' Title VII and
           NYSHRL Claims ....................................................................... 7

          A.    Plaintiff Pape's Title VII and NYSHRL Disparate Treatment
                 Discrimination Claims Fail as a Matter of Law Because He Cannot
                 Establish a Prima Facie Case ................................................. 7

          B.    Both Pape and Schenk's Title VII and NYSHRL Disparate
                 Treatment Discrimination Fail as a Matter of Law Because The
                 Cannot Prove Pretext ........................................................ 9

               1.    The River Café  Never Placed Pape Back on the Schedule
                       Because He Never Reached Out After His Vacation.................... 9

               2.    The River Café Terminated Schenk Because of His
                       Continued Lateness, Dirty Uniform, and Unprofessional
                       Conduct ................................................................ 11

          C.    Plaintiff Schenk's Title VII and NYSHRL Retaliation Claims Fail
                   as a Matter of Law Because He Cannot Prove Pre-Termination
                 Protected Activity ........................................................... 13

          D.    Plaintiffs' Title VII and NYSHRL Retaliation Claims Fail as a
                   Matter of Law Because They Cannot Prove Pretext.............................. 13

          E.    Plaintiff Schenk's Title VII and NYSHRL Hostile Work
                   Environment Claims Fail as a Matter of Law Because the Alleged
                   Harassment Did Not Materially Alter the Conditions of His
                   Employment ................................................................ 14

TABLE OF CONTENTS
(CONTINUED)

PAGE

III.   The Court Should Grant Summary Judgment on Plaintiffs' NYCHRL
       Claims As Well ...................................................................................... 17

       A.   The Court Should Not Exercise Supplemental Jurisdiction over
            Plaintiff Schenk's NYCHRL Claims.......................................... 17

       B.   Summary Judgment Is Still Warranted on Plaintiffs' NYCHRL
            Disparate Treatment Discrimination Claims for the Same Reasons
            As Their Federal and State Claims ........................................... 18

       C.   Even under NYCHRL's More Liberal Standard, Summary
            Judgment Is Still Warranted on Plaintiffs' Retaliation Claims
            Because There Is Insufficient Record Evidence of Pretext ................... 18

       D.   Plaintiff Schenk's NYCHRL Hostile Work Environment Claims
            Fail as a Matter of Law Because the Alleged Conduct Was
            Nothing More than Trivial Slights and Petty Inconveniences ................ 19

IV.    Any Attempt by Plaintiff Schenk to Claim Physical Damages (Hair Loss)
       in This Case Should Not Be Permitted ............................................... 20

CONCLUSION...................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarado v. Nordstrom, Inc.*,
   685 Fed. App'x 4 (2d Cir. 2017)..........................................................................14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................................6

*Baliva v. State Farm Mut. Auto. Ins. Co.*,
   286 A.D.2d 953, 730 N.Y.S.2d 655 (4th Dep't 2001)............................................17

*Bowen-Hooks v. City of New York*,
   13 F. Supp. 3d 179 (E.D.N.Y. 2014) (Brodie, J.) ............................................7, 8, 9

*Brierly v. Deer Park Union Free Sch. Distr.*,
   359 F. Supp. 2d 275 (E.D.N.Y. 2005) ................................................................13

*Brown v. City of Syracuse*,
   673 F.3d 141 (2d Cir. 2012).................................................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...........................................................................................6

*Chuang v. T.W. Wang Inc.*,
   647 F. Supp. 2d 221 (E.D.N.Y. 2009) ..................................................................9

*Dayes v. Pace Univ.*,
   2000 WL 307382 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 Fed. App'x 204 (2d Cir.
   2001) ...............................................................................................................16

*Dixon v. Int'l Fed'n. of Accountants*,
   416 Fed. App'x 107 (2d Cir. 2011).....................................................................18

*Donovan v. Centerpulse Spine Tech Inc.*,
   416 Fed. App'x 104 (2d Cir. 2011).....................................................................21

*Ganzy v. Sun Chem. Corp.*,
   2008 WL 3286262 (E.D.N.Y. Aug. 8, 2008).......................................................10

*Gibson v. Wyeth Pharm., Inc.*,
   2011 WL 830671 (S.D.N.Y. Mar. 9, 2011) .........................................................16

iii.

*Gregg v. N.Y. State Dep't of Tax. & Fin.*,
  1999 WL 225534 (S.D.N.Y. Apr. 19, 1999).........................................................................16

*Gurry v. Merck & Co., Inc.*,
  2003 WL 1878414 (S.D.N.Y. Apr. 14, 2003).......................................................................12

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993)................................................................................................................15

*Iverson v. Verizon Commc'ns*,
  2009 WL 3334796 (S.D.N.Y. Oct. 13, 2009).......................................................................14

*Jackson v. Nor Loch Manor HCF*,
  134 Fed. App'x 477 (2d Cir. 2005).......................................................................................11

*Joseph v. Marco Polo Network, Inc.*,
  2010 WL 4513298 (S.D.N.Y. Nov. 10, 2010)..................................................................13, 14

*Kaplan v. Multimedia Entertainment, Inc.*,
  2008 WL 686774 (W.D.N.Y. Mar. 10, 2008).......................................................................12

*Kaur v. New York City Health and Hosp. Corp.*,
  688 F. Supp. 2d 317 (S.D.N.Y. 2010)...................................................................................19

*Kolenovic v. ABM Indus., Inc.*,
  2012 N.Y. Misc. LEXIS 3560 (Sup. Ct. N.Y. County July 13, 2012)...................................20

*Li v. Educational Broadcasting Corp.*,
  2011 WL 3204689 (Sup. Ct. N.Y. County June 30, 2011)...................................................20

*Lloyd v. Holder*,
  2013 WL 6667531 (S.D.N.Y. Dec. 17, 2013)......................................................................15

*Magnoni v. Smith & Laquercia, LLP*,
  701 F. Supp. 2d 497 (S.D.N.Y. 2010), *aff'd*, 483 Fed. App'x 613 (2d Cir.
  2012).....................................................................................................................................19

*Mathirampuzha v. Potter*,
  548 F.3d 70 (2d Cir. 2008)......................................................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)................................................................................................................6

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)......................................................................................................7, 13, 18

*Meiri v. Dacon*,
 759 F.2d 989 (2d Cir. 1985)..................................................................................10, 12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
 715 F.3d 102 (2d Cir. 2013)...............................................................................18

*In re Mirena IUD Prod. Liab. Litig.*,
 202 F. Supp. 3d 304 (S.D.N.Y. 2016)...............................................................21

*Missick v. City of N.Y.*,
 707 F. Supp. 2d 336 (E.D.N.Y. 2010) ........................................................10, 12

*Mormol v. Costco Wholesale Corp.*,
 364 F.3d 54 (2d Cir. 2004)................................................................................15

*Ortiz v. United Food & Commercial Workers Union (UFCW), AFL-CIO, Local
 348-S*, 2016 WL 4257348 (E.D.N.Y. Aug. 11, 2016) (Brodie, J.) .........................18

*Osborne v. Literacy Partners, Inc.*,
 2007 WL 2298354 (S.D.N.Y. Aug. 9, 2007) .....................................................12

*Payton v. City Univ. of N. Y.*,
 453 F. Supp. 2d 775 (S.D.N.Y. 2006)...............................................................16

*Reyes v. Krasdale Foods, Inc.*,
 945 F. Supp. 2d 486 (S.D.N.Y. 2013)..................................................................6

*Richardson v. Bronx Lebanon Hosp.*,
 2014 WL 4386731 (S.D.N.Y. Sept. 5, 2014) ....................................................18

*Rosenberg v. Chesapeake Pharm. & Health Care Packaging*,
 888 F. Supp. 2d 302 (E.D.N.Y. 2012) .................................................................9

*Saenger v. Montefiore Med. Ctr.*,
 706 F. Supp. 2d 494 (S.D.N.Y. 2010)...............................................................11

*Salters v. Hewitt-Young Electric, LLC*,
 2017 WL 2403340 (W.D.N.Y. June 2, 2017).....................................................11

*South v. Cont'l Casualty Co.*,
 2017 WL 782909 (S.D.N.Y. 2017).....................................................................17

*Spina v. Our Lady of Mercy Med. Ctr.*,
 2003 WL 22434143 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 120 Fed. App'x 408 (2d
 Cir. 2005) ..........................................................................................................16

*Tone v. U.S. Postal Service*,
    68 F. Supp. 2d 147 (N.D.N.Y. 1999), *aff'd*, 242 F.3d 368 (2d Cir. 2000) .............................13

*United States v. Garcia*,
    413 F.3d 201 (2d Cir. 2005)...........................................................................................21

*Williams v. New York City Housing Auth.*,
    61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009) ........................................................19, 20

*Wills v. Amerada Hess Corp.*,
    379 F.3d 32 (2d Cir. 2004).............................................................................................21

*Wilson v. N.Y.P. Holdings, Inc.*,
    2009 U.S. Dist. LEXIS 28876 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 444 Fed.
    App'x 500 (2d Cir. 2011) ..............................................................................................19

*Ya-Chen Chen v. City Univ. of N.Y.*,
    805 F.3d 59 (2d Cir. 2015)............................................................................................14

**Statutes**

Title VII ........................................................................................................... *passim*

New York City Human Rights Law.................................................................. *passim*

New York State Human Rights Law ................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 26 ......................................................................................................21

Fed. R. Evid. 701 ......................................................................................................20

Fed. R. Civ. P. 56 ....................................................................................................1, 6

Local Rule 56.1 ...........................................................................................................1

Fed. R. Evid. 702 ...................................................................................................20, 21

Corporate defendant Dircksen & Talleyrand Inc. d/b/a The River Café (the "River Café" or the "Restaurant") and individually named defendant Luke Vossen submit this Memorandum of Law in Support of their Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Jonathan Schenk, a former employee who was terminated after only three weeks of employment for being late the majority of his shifts, wearing a dirty uniform, and acting in an unprofessional manner, and Plaintiff Peter Pape, a former employee who voluntarily never returned to work after going on vacation, are suing the River Café and their former supervisor for discrimination, harassment, and retaliation under Title VII, the New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL").  As demonstrated below, their claims have no merit.[1]

## STATEMENT OF FACTS

### I.    BACKGROUND

The River Café is an elegant dining establishment and one of New York's most unique locations, featuring sweeping views of the New York City skyline and the Statue of Liberty. (Defendants' Local Rule 56.1 Statement of Undisputed Material Facts (hereinafter "56.1"), ¶ 1). The River Café employs a diverse workforce and is committed to maintaining a workplace free of discrimination, harassment, and retaliation.  (56.1 ¶ 2).

Scott Stamford is the River Café's General Manager.  (56.1 ¶ 3).  He has worked for the River Café for approximately thirty years – as General Manager for over a decade – and has never had any discrimination, harassment, or retaliation complaints filed against him. (56.1 ¶ 4).

---

[1] Defendants are not moving for summary judgment on Plaintiff Pape's hostile work environment claims under Title VII, NYSHRL, and NYCHRL.  However, Defendants are moving for summary judgment on all of Plaintiff Schenk's claims and the rest of Pape's claims.

As General Manager, Stamford is in charge of overseeing the daily operations of the entire Restaurant.  (56.1 ¶ 5).

Luke Vossen is the Director of Catering.   (56.1 ¶ 6). Stamford is one of Vossen's supervisors.  (56.1 ¶ 7). Vossen has worked for the River Café for over eight years and has also never had any discrimination, harassment, or retaliation complaints filed against him besides the instant lawsuit.  (56.1 ¶ 8). As Director of Catering, Vossen is responsible for overseeing the daily operations of the private dining room that is located within the Restaurant, supervising the private dining employees, and making event sales. (56.1 ¶ 9).

The private dining room is separated from the main dining room and has a completely different staff.  (56.1 ¶ 10). It is only open for special events, such as private parties, wedding receptions, etc.  (56.1 ¶ 11). Accordingly, the work schedules for private dining employees – who are hired to work *specifically* to work in the private dining room only – vary depending on the number of events scheduled.  (56.1 ¶ 12). Sometimes no events are scheduled in a week; other times, there could be eight events scheduled.  (56.1 ¶ 13). The busiest months for the private dining room are May, October, and December.  (56.1 ¶ 14).

## II.    PLAINTIFF SCHENK'S HIRE AND RAPID TERMINATION

The River Café hired Jonathan Schenk as a private dining room server starting on October 15, 2015.  (56.1 ¶ 15). Schenk worked a total of eight shifts before he was terminated on November 10, 2015:

| Date | Hours Worked | Total |
|------|------|------|
| 10/15/2015 | 3:49-10:35pm | 6 hrs. 46 min. |
| 10/18/2015 | 4:10-10:55pm | 6 hrs. 45 min. |
| 10/22/2015 | 3:09-10:30pm | 7 hrs. 21 min. |
| 10/24/2015 | 4:13-11:25pm | 7 hrs. 12 min. |
| 10/25/2015 | 4:07-10:37pm | 6 hrs. 30 min. |
| 10/28/2015 | 3:52-11:04pm | 7 hrs. 12 min. |
| 11/6/2015 | 3:45-11:20pm | 7 hrs. 35 min. |

2

| 11/7/2015 | 3:35-10:21pm | 6 hrs. 46 min. |
| 11/10/2015 | 3:56-4:31pm | 0 hrs. 35 min. |

(56.1 ¶ 16). Out of the eight shifts above, Schenk was late for almost all of them: 10/15 (19 minutes), 10/18 (10 minutes), 10/24 (13 minutes), 10/25 (37 minutes), 11/6 (15 minutes), 11/7 (5 minutes).  (56.1 ¶ 17).

On October 21, 2015, Vossen wrote to Schenk: "You have to be better with your schedule in the future, otherwise this won't work."  (56.1 ¶ 18).  Nevertheless, on October 24 and 25, Schenk was still late to work, and October 27th, he called out from work last minute.  (56.1 ¶ 19).  On November 6, Schenk was late again, so Vossen issued another warning.  (56.1 ¶ 20). Finally, on November 9th, Schenk was so late that the maître'd, Roger Quintero, sent Schenk home before he even punched in.  (56.1 ¶ 21).

Schenk was terminated on November 10, 2015.  (56.1 ¶ 22).  Because the River Café is an expensive, refined restaurant, its servers' appearance and presentation are of the utmost importance.  (56.1 ¶ 23).  All private dining room waiters are issued a bright white jacket to wear as a uniform, and are responsible for wearing their own white button-down shirts underneath. (56.1 ¶ 24).  On November 10th, however, Schenk arrived to work with a white button-down shirt that had visible yellowing around its collar.  (56.1 ¶ 25).  This yellowing was particularly noticeable when viewed next to the bright white jacket.  (56.1 ¶ 26).

When Vossen addressed his dirty shirt, Schenk acted in an unprofessional and insubordinate manner.  (56.1 ¶ 27).  Instead of accepting responsibility, Schenk started challenging Vossen's opinion and claiming that the shirt was acceptable.  (56.1 ¶ 28).  This was the last straw.  Between Schenk's persistent lateness, the dirty uniform, and the unprofessional response to Vossen's questions about his shirt – all of which occurred in the first three weeks of work – Vossen decided to terminate Schenk's employment.  (56.1 ¶ 29).  He quickly consulted

with General Manager Scott Stamford, and then proceeded to inform Schenk that he would no longer be working at the River Café.  (56.1 ¶ 30).

Sometime after November 18, 2015, the River Café received a demand letter in the mail from Schenk's attorney.  (56.1 ¶ 33).  This was the first time Schenk complained of discrimination or harassment to management.  (56.1 ¶ 34).

## III.    PLAINTIFF PAPE'S HIRE AND ULTIMATE JOB ABANDONMENT

The River Café hired Peter Pape as a private dining room service bartender starting on June 4, 2015.  (56.1 ¶ 35).  As a service bartender, Pape was responsible for making drinks that are requested by members of the wait staff.  He did not serve guests directly.  (56.1 ¶ 36).

Pape was in school during the period in which he worked at the River Café.  (56.1 ¶ 37). Accordingly, he worked inconsistently throughout his approximately six months of employment, with most of his shifts falling on a Friday, Saturday, or Sunday.

| Month | Days Worked |
|-----------|-------------|
| June | 15 |
| July | 7 |
| August | 2 |
| September | 8 |
| October | 5 |
| November | 2 |
| December | 2 |

(56.1 ¶ 38).  In the last three months of his employment, however, the amount of shifts that Pape worked dropped significantly.  (56.1 ¶ 39).

The nature of the private events business is that employees only work when the Restaurant is hired for an event.  (56.1 ¶ 40).  Accordingly, everyone works on a part-time basis and the vast majority of employees had other jobs or, like Pape, attended school.  (56.1 ¶ 41). Since the work schedule is constantly changing, Vossen has to solicit availability regularly. (56.1 ¶ 42).  As per his usual practice, when he needed employees to work scheduled events, he

spoke to them in person, called, emailed, or texted them to find out their availability.  (56.1 ¶ 43).

In Pape's case, Vossen contacted Pape for shifts during these three months, but Pape was mostly

unavailable.  (56.1 ¶ 44).

Accordingly, in October 2015, Vossen hired another service bartender, Max Druiz, so

that he had service bartender coverage for events moving forward.   (56.1 ¶ 45). This new

bartender had more availability than Pape and was more responsive.  (56.1 ¶ 46).  Accordingly,

on three occasions when both Pape and Druiz were available to work – October 17, 24 and

December 12 – Vossen scheduled Pape in a server slot instead of the bartender slot.  (56.1 ¶ 47).

Servers and bartenders in the private dining room are paid at the same rate and work the same

hours.  (56.1 ¶ 48).

In November 2015, Pape only worked two shifts – November 5 and 15.  (56.1 ¶ 50).  On

November 6, Vossen sent Pape a text message expressing his frustration with Pape's lack of

responsiveness and availability: "I never got your email address. This is getting old."  (56.1 ¶

51).  Then again on November 29, Vossen emailed Pape: "I didn't hear back from you. Are you

ok for Saturday 3:30pm?"  (56.1 ¶ 52).  Plaintiff admitted in his deposition that he mostly

stopped texting Vossen once he hired his attorney and started looking for other jobs in December

as well, even when he was still working.  (56.1 ¶ 53).

In December, Pape was scheduled for three shifts – December 5, 12, and 19 – after

requesting to be scheduled for only one shift per week.  (56.1 ¶ 54). Pape, however, called in sick

on December 19, so he did not work that day. (56.1 ¶ 55).  Previously, Pape had told Vossen that

he could not work New Year's Eve and then was going on vacation with his family.  (56.1 ¶ 56).

Vossen directed Pape to contact him upon his return to provide his new availability.  (56.1 ¶ 57).

Pape, however, never contacted Vossen or anyone at the River Café again. (56.1 ¶ 58). Consequently, the River Café considers Pape to have resigned his employment. (56.1 ¶ 65).

Sometime after December 8, 2015, the River Café received a demand letter in the mail from Pape's attorney. (56.1 ¶ 66).[2] This was the first time Pape complained of discrimination or harassment to management. (56.1 ¶ 68).

## ARGUMENT

## I.     THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *Reyes v. Krasdale Foods, Inc.*, 945 F. Supp. 2d 486, 490 (S.D.N.Y. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

For a plaintiff to survive summary judgment, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, he must produce sufficient *admissible* evidence from which a reasonable fact-finder could find in his favor. *Id. See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (holding that a plaintiff cannot escape summary judgment by presenting conclusory or speculative evidence; she must present "concrete evidence from which a reasonable juror could return a verdict in [her] favor"). Summary judgment is also warranted when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[2] Pape's December 12th server shift was scheduled before the River Café received this demand letter. (56.1 ¶ 67).

The undisputed evidence here – including Plaintiffs' deposition testimony, Defendants' supporting declarations, and the documentary evidence – all of Plaintiffs' claims (except Pape's hostile work environment claims, for which Defendants are not moving for summary judgment) should be dismissed as a matter of law.

## II.     THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFFS' TITLE VII AND NYSHRL CLAIMS

### A.     Plaintiff Pape's Title VII and NYSHRL Disparate Treatment Discrimination Claims Fail as a Matter of Law Because He Cannot Establish a *Prima Facie* Case

Discrimination claims under Title VII and NYSHRL are analyzed under the well-known *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting paradigm.  First, in order to establish a *prima facie* claim of discrimination, Pape must show: (1) that he was a member of a protected group; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) the adverse employment actions occurred in circumstances giving rise to an inference of discrimination.  *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 211 (E.D.N.Y. 2014) (Brodie, J.).  Here, Pape cannot make out a *prima facie* case because he was never subjected to an adverse action.

Pape may point to the following alleged adverse actions: (1) assignment of server shifts at the end of his employment, and (2) Vossen taking him off the schedule in December 2015.  Each with be taken up in turn.

First, Pape's assignment of server shifts at the end of his employment was not "adverse" within the meaning of the law.  In order for an employment action to rise to the level of "adverse" it must be a "'materially adverse change in the terms and conditions of employment [and] more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Bowen-Hooks*, 13 F. Supp. 3d at 211 (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 79 (2d Cir.

2008)).  Pape's temporary, non-consecutive assignment of only <u>three</u> shifts as a server – where he made the same amount of pay, worked the same shift, but just had different job duties (56.1 ¶¶ 47-49) – cannot be considered a materially adverse change in his employment.

The Court's decision in *Bowen-Hooks* is directly on point.  There, the plaintiff claimed that her supervisor's request that she fill in for another employee in a lower-ranked position on two to three occasions should be considered an adverse action.  *Bowen-Hooks*, 13 F. Supp. 3d at 215.  The Court disagreed.  It held: "Although reassignment to a position that is objectively less prestigious" – a circumstance that is not even present in this case – "can be considered materially adverse . . .  request that Plaintiff fill in on a few occasions for a lower-ranked individual is not similarly material in its adversity." *Id. See also Brown v. City of Syracuse,* 673 F.3d 141, 150 (2d Cir. 2012).  Similarly, a request by Vossen that Pape work three server shifts is also not material in its adversity, and accordingly, does not rise to the level of an adverse action.

Second, the fact that Vossen took Plaintiff off the schedule in December 2015 is also not an adverse action.  Pape never received notification of termination.  (56.1 ¶¶ 58, 65).  In the last three months of his employment, Pape rarely worked.  (56.1 ¶¶ 39, 54).  In October, he worked five shifts and in November, he worked just two shifts. (56.1 ¶¶ 38, 44, 50).  In December 2015, Pape worked two shifts – one on December 5 and another and December 12.  (56.1 ¶¶ 54-55).  He called in sick on December 19, and told Vossen that he would be unavailable for the rest of December and the beginning of January in order to go on vacation.  (56.1 ¶¶ 54-56).  In response, Vossen directed Pape to contact him upon his return to provide his new availability.  (56.1 ¶ 57).  Pape, however, never contacted Vossen or anyone at the River Café again.  (56.1 ¶ 58).  Under these facts, Pape resigned his employment and was not subjected to an adverse action by Defendants.

8

Since Pape cannot establish all of the *prima facie* elements of his discrimination claims, the Court should grant summary judgment.

### B.       Both Pape and Schenk's Title VII and NYSHRL Disparate Treatment Discrimination Fail as a Matter of Law Because The Cannot Prove Pretext

Once a plaintiff meets his *prima facie* burden, an employer must then present a legitimate, nondiscriminatory basis for its actions. *See Bowen-Hooks*, 13 F. Supp. 3d at 210. The Defendants' burden "is not a particularly steep hurdle." *Rosenberg v. Chesapeake Pharm. & Health Care Packaging,* 888 F. Supp. 2d 302, 309 (E.D.N.Y. 2012). The burden then shifts back to the plaintiff to prove the stated reasons are a pretext intended to hide discriminatory animus. *Bowen-Hooks*, 13 F. Supp. 3d at 210. Here, neither Pape nor Schenk can prove pretext.

### 1.       The River Café  Never Placed Pape Back on the Schedule Because He Never Reached Out After His Vacation

As stated previously, Pape requested that the River Café not schedule any shifts for him at the end of December and beginning of January because he went on vacation. (56.1 ¶¶ 54-56). In response, Vossen asked Pape to reach out after he returned in order to be placed back into consideration for shifts. (56.1 ¶ 57). Pape never did so. (56.1 ¶ 58). This is a legitimate reason why the River Café never placed Pape back on the schedule and considered him to have resigned his employment. *See Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, 230-31 (E.D.N.Y.2009) (holding that the employer's proffered reason for termination of plaintiff's employment – his own voluntary resignation – was legitimate and nondiscriminatory).

Moreover, there is nothing in the record to support a finding of pretext. First, Pape readily admitted during his deposition that he did not reach back out to the River Café after he returned from vacation to provide new availability, that he started to look for a new job even while he was working, and that he never received notice of termination. (56.1 ¶ 58).

Second, Pape will not be able to identify any who is similarly situated to him who was placed back on the schedule, after a vacation or lengthy absence, without reaching out first to provide new availability. To create an issue of material fact, Plaintiff must prove that he was "similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self." *Ganzy v. Sun Chem. Corp.*, 2008 WL 3286262, at *6 (E.D.N.Y. Aug. 8, 2008) (internal citations and quotation marks omitted). The fact that Plaintiff will not be able to point to *any* similarly-situated employee outside of his protected category who was actually placed back on the schedule defeats his discrimination claims. *See Missick v. City of N.Y.*, 707 F. Supp. 2d 336, 344 (E.D.N.Y. 2010) (granting summary judgment where plaintiff failed to identify similarly situated employees who were treated more favorably).

Third, in not placing Pape back on the schedule, Vossen was simply acting in the same manner as he has done for the last eight years as Director of Catering. (56.1 ¶ 59). The nature of the private events business is that employees only work when the Restaurant is hired for an event. (56.1 ¶ 60). Accordingly, everyone works on a part-time basis and the vast majority of employees have other jobs or, like Pape, attend school. (56.1 ¶ 61). Since the work schedule is constantly changing, Vossen has to solicit availability regularly. (56.1 ¶ 62). And, when employees go on a leave of absence, take time off, or otherwise cannot work for an extended period of time, Vossen expects them to reach back out when they have work availability again. (56.1 ¶ 63). Since Vossen started at the River Café, approximately ten employees have abandoned their employment in the same manner that Pape did here. (56.1 ¶ 64).

Since Plaintiff will not be able to show differential treatment or that the River Café inconsistently applied this normal practice to him, summary judgment is warranted. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (finding no evidence of pretext where plaintiff "has

offered no evidence suggesting that the INS's treatment of her differed from that accorded other non-Jewish employees; that the INS departed from its general policies in discharging her; or that non-Jewish persons on probation who acted similarly were retained").

Accordingly, for all the above reasons, the Court should grant summary judgment on Pape's Title VII and NYSHRL disparate treatment discrimination claims.

### 2. The River Café Terminated Schenk Because of His Continued Lateness, Dirty Uniform, and Unprofessional Conduct

Similarly, the River Café also had a legitimate, non-discriminatory reason for terminating Schenk's employment – being late to the majority of his shifts within the first month of employment, acting unprofessionally, and wearing a dirty shirt. (56.1 ¶¶ 17-30). Courts regularly grant summary judgment in cases with similar facts. *See, e.g.*, *Jackson v. Nor Loch Manor HCF*, 134 Fed. App'x 477, 478 (2d Cir. 2005) (summary judgment affirmed in a discrimination lawsuit where plaintiff was terminated for violating the company's attendance policy); *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 508 (S.D.N.Y. 2010) ("Defendant cites Plaintiff's . . . poor attitude as the legitimate, nondiscriminatory reason for his termination."); *Salters v. Hewitt-Young Electric, LLC*, 2017 WL 2403340, at *4 (W.D.N.Y. June 2, 2017) (granting summary judgment in case where plaintiff was terminated, in part, because of his disheveled clothes).

Moreover, there is nothing in the record to support a finding of pretext with respect to Schenk's termination either. First, Schenk readily admitted in his deposition that he was late on at least five occasions and sent home by Quintero on November 6th due to his lateness. (56.1 ¶¶ 17, 21). With respect to the events of November 10th, Schenk also admitted that he a stain on his shirt. (56.1 ¶ 25).

11

Second, Schenk never complained about discrimination to anyone in management until after he was terminated.  (56.1 ¶ 34).  *See Osborne v. Literacy Partners, Inc.*, 2007 WL 2298354, at \*6 (S.D.N.Y. Aug. 9, 2007) (plaintiff's failure to complain about alleged discrimination undermined her claims).

Third, Schenk will not be able to identify any who is similarly situated to him that was not terminated after being late the majority of his shifts, within the first month of employment, and who acted unprofessionally and came to work in a dirty shirt.  *See Missick*, 707 F. Supp. 2d at 344.

Fourth, in terminating Schenk, Vossen was simply acting in the same manner as he has done for the last eight years as Director of Catering.  (56.1 ¶ 31).  Over the course of his employment, Vossen has terminated approximately ten employees for attendance/lateness issues, five for unprofessional conduct, and three for uniform violations.  (56.1 ¶¶ 32).  Since Plaintiff will not be able to show differential treatment or that the River Café inconsistently applied these normal practices to him, summary judgment is warranted.  *See Meiri*, 759 F.2d at 998.

Finally, Schenk may argue that the reasons for his termination were unfair or unduly harsh.  However, Schenk's personal feelings and opinions on whether he should have been terminated is irrelevant.  *See Gurry v. Merck & Co., Inc.*, 2003 WL 1878414, at \*7 n.9 (S.D.N.Y. Apr. 14, 2003) (holding plaintiffs "subjective belief that she did not misrepresent her employment history is insufficient to rebut defendants' legitimate nondiscriminatory reason.");  *Kaplan v. Multimedia Entertainment, Inc.*, 2008 WL 686774, at \*7 (W.D.N.Y. Mar. 10, 2008) (holding that plaintiff's "assertion that she did not knowingly violate the policy . . . is not sufficient to rebut defendants' legitimate reason for her termination").

Accordingly, for all the above reasons, the Court should grant summary judgment on Schenk's Title VII and NYSHRL disparate treatment discrimination claims as well.

### C.    Plaintiff Schenk's Title VII and NYSHRL Retaliation Claims Fail as a Matter of Law Because He Cannot Prove Pre-Termination Protected Activity

Retaliation claims under Title VII and NYSHRL are also analyzed under the well-known *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) burden-shifting paradigm. First a plaintiff must establish a *prima facie* case of retaliation: (1) that he engaged in "protected activity," (2) which was known to the defendant, (3) who thereafter subjected him to a "materially adverse employment action," where (4) there was a "causal connection" between the protected activity and adverse action. *Joseph v. Marco Polo Network, Inc.*, 2010 WL 4513298, at *16 (S.D.N.Y. Nov. 10, 2010).

Here, Schenk cannot meet the *prima facie* requirements for his retaliation claim because he did not engage in any protected activity before his termination.  Schenk was terminated on November 10, 2015.  (56.1 ¶ 22).  His attorney did not send a demand letter to the River Café, however, until after November 18, 2015.  (56.1 ¶ 33).  Accordingly, Schenk's Title VII and NYSHRL retaliation claims immediately fail.  *See Tone v. U.S. Postal Service*, 68 F. Supp. 2d 147, 153 (N.D.N.Y. 1999), *aff'd*, 242 F.3d 368 (2d Cir. 2000) ("Defendant's retaliatory action cannot take place before plaintiff engaged in a protected activity, so the retaliation claim must be dismissed.").  The Court should grant summary judgment on his retaliation claims.

### D.    Plaintiffs' Title VII and NYSHRL Retaliation Claims Fail as a Matter of Law Because They Cannot Prove Pretext

Once a plaintiff meets his *prima facie* burden, an employer must then articulate a legitimate, non-retaliatory basis for its actions. *Joseph*, 2010 WL 4513298, at *16; *Brierly v. Deer Park Union Free Sch. Distr.*, 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005) (stating that "the

employer's burden … is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions … and [courts] may not sit as super personnel departments").

The burden then shifts back to the plaintiff to prove the stated reasons are a pretext intended to hide retaliatory animus. *Joseph*, 2010 WL 4513298, at *16. More specifically, the plaintiff must establish but-for causation and produce evidence that "'the adverse action would not have occurred in the absence of the retaliatory motive.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 78 (2d Cir. 2015). Here, neither Pape nor Schenk can prove pretext or but-for causation.

In the present case, for the same reasons as listed above in Point II.B, there is simply no evidence that the River Café's decision to terminate Schenk's employment and the Restaurant's failure to place Pape back on the schedule was pretextual or "would not have occurred in the absence of the retaliatory motive." *Alvarado v. Nordstrom, Inc.*, 685 Fed. App'x 4, 7 (2d Cir. 2017). This is true even if Plaintiffs argue that the timing between the adverse actions and any harassment complaints is suspicious, because temporary proximity alone is insufficient to prove pretext. *See Iverson v. Verizon Commc'ns*, 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009) ("Merely claiming temporal proximity . . . is not enough to show that [the employer's] reasons for termination were a pretext for discrimination.").

Since there is no evidence of pretext or but-for causation, both Pape and Schenk's Title VII and NYSHRL retaliation claims should be dismissed with prejudice as well.

### E.   Plaintiff Schenk's Title VII and NYSHRL Hostile Work Environment Claims Fail as a Matter of Law Because the Alleged Harassment Did Not Materially Alter the Conditions of His Employment

To establish a claim of hostile work environment, Schenk must show that his workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working

14

environment.  *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir. 2004).  Courts

must look to the totality of the circumstances to determine whether an environment is "hostile"

or "abusive" and consider "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23

(1993).  Furthermore, the employee's subjective perception is not enough, the work environment

must be hostile from the objective point of view of a reasonable person.  *Lloyd v. Holder*, 2013

WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013).

In the present case, Schenk and Vossen only worked together for nine shifts (the last of

which only lasted 35 minutes).  (56.1 ¶ 65).  In addition, Schenk testified that the alleged

harassment only started on the second shift (56.1 ¶ 70), meaning that following allegations of

sexual harassment against Vossen *only occurred across a span of seven shifts*:

- Vossen had a "sexual demeanor," told him he should cut his hair,[3] and said "all looks, no brain."

- When Schenk was changing a light bulb on a ladder, Vossen placed his hand on Schenk's calf for approximately eight seconds, pinched it, and said "you are so skinny, you got to eat more."

- Schenk was picking up drinks and an hors d'oeuvres plate, and Vossen said to him: "I want to slap you in the face with that lamb bone, and you are all good looks, no brain . . . [y]ou know you want to . . . you have no idea what I could do to you."

- Schenk was in the kitchen, and Vossen "put together a little cracker, cheese and honey on it, and he put it in front of my face like he was about to feed me, and he said try this Schenky, and he like put the food in my mouth, and I was like in mid bite and just kind of ate it."  During that conversation, Vossen also said: "you could put all kinds of things in there . . . in that mouth" and "I could knock you out with one blow."

---

[3] Schenk admitted that the comments made about his hair were not sexual. (56.1 ¶ 72).

15

- Schenk was speaking to another employee, and Vossen came up and "smacked my ass, my butt, and kind of like grabbed it a little, and sa[id] what's up Schenky."

- Schenk was picking up tips in Vossen's office, and Vossen said "you don't know what I can do to you in a very like low tone voice."  Schenk laughed in response.

(56.1 ¶¶ 71-73).  Schenk did not tell Vossen to stop these alleged actions and conduct.  (56.1 ¶ 74).

At most, Schenk's allegations of the handful of seconds-long harassment may somehow amount to an assertion that Vossen acted unprofessionally towards him during this short time period – which is not sufficient to demonstrate a sexual harassment claim under Title VII or the NYSHRL.  *See Payton v. City Univ. of N. Y.*, 453 F. Supp. 2d 775, 785 (S.D.N.Y. 2006) ("Conduct that is merely offensive, unprofessional, or childish cannot support a hostile work environment claim.") (citations and quotations omitted); *Gibson v. Wyeth Pharm., Inc.*, 2011 WL 830671, at *10  (S.D.N.Y. Mar. 9, 2011) (discrimination laws are not meant to impose a general civility code).

Courts routinely grant summary judgment in Title VII/NYSHRL sexual harassment hostile work environment cases that involve behavior that is analogous to, or more severe and/or pervasive, than what is alleged here.  *See, e.g.*, *Dayes v. Pace Univ.*, 2000 WL 307382, at *1, 4 (S.D.N.Y. Mar. 24, 2000), *aff'd*, 2 Fed. App'x 204 (2d Cir. 2001) (supervisor asked plaintiff out for drinks, offered to drive her home, acted like a "jealous husband," suggested spending weekend together, stared at her, commented on her skirt and legs, and pulled his chair close to hers while placing his hand on her back); *Spina v. Our Lady of Mercy Med. Ctr.*, 2003 WL 22434143, at *3 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 120 Fed. App'x 408 (2d Cir. 2005), (supervisor's comment that plaintiff looked good in tight pants, his leering at plaintiff, referring to plaintiff as a "bitch" twice, following her to the restroom door, yelling at her for no reason, and pointing his

16

finger in her face); *Gregg v. N.Y. State Dep't of Tax. & Fin.*, 1999 WL 225534, at *12 (S.D.N.Y. Apr. 19, 1999) (plaintiff subject to ten to fifteen inappropriate conversations, four instances of offensive touching and repeated invitations to drinks and meals); *Baliva v. State Farm Mut. Auto. Ins. Co.*, 286 A.D.2d 953, 730 N.Y.S.2d 655, 656 (4th Dep't 2001) (within a period of approximately 10 days, supervisor touched plaintiff's shoulder several times, screamed at plaintiff, invaded her personal space, made a comment with respect to sexual orientation and glanced at her in a sexual manner).

If the conduct in the above cases was legally insufficient to sustain a hostile work environment claim, then, *a fortiori*, the childish and immature behavior that Vossen allegedly displayed, which is less severe in comparison, cannot support a finding of unlawful sexual harassment. Even giving Schenk the benefit of all favorable inferences, the incidents he alleges are minor and too few in number, only lasted a few seconds each, occurred in too short of time, and are not egregious enough to establish the existence of a sexually abusive working environment. No reasonable person would consider Vossen's alleged behavior to be sufficiently "severe or pervasive."

For the above reasons, Schenk's Title VII and NYSHRL hostile work environment claims should be dismissed with prejudice.

## III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFFS' NYCHRL CLAIMS AS WELL

### A.   The Court Should Not Exercise Supplemental Jurisdiction over Plaintiff Schenk's NYCHRL Claims

As discussed above, Plaintiff Schenk is unable to establish any of his Title VII and NYSHRL claims. "[C]ourts regularly decline jurisdiction over NYSHRL and NYCHRL claims once the federal employment claims have been dismissed." *South v. Cont'l Casualty Co.*, 2017 WL 782909, at *9 (S.D.N.Y. 2017).

17

Here, as it did in *Ortiz v. United Food & Commercial Workers Union (UFCW), AFL-CIO, Local 348-S*, 2016 WL 4257348, at *3 (E.D.N.Y. Aug. 11, 2016) (Brodie, J.), the Court should exercise its discretion and decline jurisdiction over Plaintiff Schenk's remaining NYCHRL claims and dismiss his case without prejudice to refile in state court.

**B.     Summary Judgment Is Still Warranted on Plaintiffs' NYCHRL Disparate Treatment Discrimination Claims for the Same Reasons As Their Federal and State Claims**

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal citations omitted) (watershed case).

Even under this more liberal standard, however, Plaintiffs' NYCHRL disparate treatment claims fail for the same reasons as their federal and state claims fail. *See supra* Point II.A & B.

**C.     Even under NYCHRL's More Liberal Standard, Summary Judgment Is Still Warranted on Plaintiffs' Retaliation Claims Because There Is Insufficient Record Evidence of Pretext**

While the but-for causation standard does not apply to NYCHRL retaliation claims, during the pretext stage of the *McDonnell Douglas* burden shifting analysis, a plaintiff must still establish a causal connection between his protected activity and an "action that would be reasonably likely to deter a person from engaging in a protected activity." *See Dixon v. Int'l Fed'n. of Accountants*, 416 Fed. App'x 107, 110 n.1 (2d Cir. 2011); *Richardson v. Bronx Lebanon Hosp.*, 2014 WL 4386731, at *10 (S.D.N.Y. Sept. 5, 2014).

Here, for all the reasons as explained in Points II.C and D, no such causal connection exists.   Therefore, the Court should grant summary judgment upon Plaintiffs' NYCHRL retaliation claims, in addition to their Title VII and NYSHRL claims. *See Dixon*, 416 Fed. App'x

at 110-11 (affirming summary judgment on plaintiff's NYCHRL retaliation claims because plaintiff failed to "identify any evidence, apart from temporal proximity, to suggest that this reason was pretextual").

> **D.    Plaintiff Schenk's NYCHRL Hostile Work Environment Claims Fail as a Matter of Law Because the Alleged Conduct Was Nothing More than Trivial Slights and Petty Inconveniences**

While the standard for a hostile work environment claim under the NYCHRL is less stringent than under federal and state law, the NYCHRL is still not intended to operate as a general civility code. *See Kaur v. New York City Health and Hosp. Corp.,* 688 F. Supp. 2d 317, 340 (S.D.N.Y. 2010).

As set forth by the First Department in *Williams v. New York City Housing Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009), an employer is liable for a hostile work environment when an employee is "treated less well than other employees because of [his] gender," unless the "conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Id.* at 78-80. Schenk's NYCHRL hostile work environment claim fails under this standard as well.

As stated above, Schenk only alleges a small number of incidents of boorish conduct by Vossen, each of which could not have lasted more than a few seconds, over the span of just seven shifts. Courts routinely grant summary judgment even in NYCHRL sexual harassment hostile work environment cases that involve behavior that is analogous to, or more severe and/or pervasive, than what is alleged here. *See, e.g.*, *Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp. 2d 497 (S.D.N.Y. 2010), *aff'd*, 483 Fed. App'x 613 (2d Cir. 2012) (dismissing NYCHRL claim where a supervisor admitted that he told plaintiff explicit details about his sex life, referred to plaintiff as "voluptuous," and touched her on her knee), *Wilson v. N.Y.P. Holdings, Inc.*, 2009 U.S. Dist. LEXIS 28876, at *88-89 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 444 Fed. App'x 500 (2d Cir.

2011) (granting summary judgment  on NYCHRL claim where supervisors said that: "training females is like training a dog;" "women need to be horsewhipped"; referred to black females as "whores" or "sluts;" and referred to female employees as "girls"); *Li v. Educ. Broadcasting Corp.*, 2011 WL 3204689, at *1-2, 9 (Sup. Ct. N.Y. County June 30, 2011) (granting defendant's motion to dismiss where plaintiff alleged that a coworker, over the course of two months, grabbed his buttocks and, on a separate occasion "while stroking his arm, stated to him 'Asian skin is so soft,' and 'you love it when a hot guy like me touches you'"); *Kolenovic v. ABM Indus., Inc.*, 2012 N.Y. Misc. LEXIS 3560, at *2, 15 (Sup. Ct. N.Y. County July 13, 2012) (granting summary judgment on NYCHRL claims where Plaintiff claimed that her direct supervisor would refer to plaintiff as 'My Bitch,' commented that '[h]er boobs are always popping out' or, '[s]he is wearing her thong today,'" and asked her if she wanted to make some extra money at a bachelor's party – implying that plaintiff was either a stripper or a prostitute).

Thus, even applying the more liberal *Williams* standard, dismissal of Schenk's NYCHRL hostile work environment claim is appropriate as well.

## IV.   ANY ATTEMPT BY PLAINTIFF SCHENK TO CLAIM PHYSICAL DAMAGES (HAIR LOSS) IN THIS CASE SHOULD NOT BE PERMITTED

As a final matter, Schenk was never designated as an expert witness – nor is there any evidence that he is qualified in any way to offer expert medical opinions. This fact, however, did not stop him from testifying that Vossen's alleged conduct caused him to suffer hair loss.  (56.1 ¶ 75).[4]

Under Rule 701 of the Federal Rules of Evidence, a lay witness may not testify "based on scientific, technical, or other specialized knowledge within the scope of Rule 702" (i.e., the rule

---

[4] Plaintiff is claiming that his hair loss started after his termination, even though the picture he submitted with his resume to the River Café shows a distinct receding hair line.  (56.1 ¶¶ 75, 77).

that governs expert testimony). *See* Fed. R. Evid. 701(c).  The purpose behind this rule is to "prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in . . . Fed. R. Civ. P. 26." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005).

Accordingly, it is well settled that expert testimony is required to demonstrate medical causation where the cause would not be obvious to the lay juror. *See, e.g.*, *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (expert testimony required for causal connection to cancer); *In re Mirena IUD Prod. Liab. Litig.*, 202 F. Supp. 3d 304, 311 (S.D.N.Y. 2016) (expert testimony required for causal connection to uterine perfusion); *see also Donovan v. Centerpulse Spine Tech Inc.*, 416 Fed. App'x 104 (2d Cir. 2011) (summary order) (expert testimony required for causal connection to plaintiff's pain).  .

Here, it would not obvious to a lay juror whether Vossen's alleged conduct could have caused Schenk's hair loss.  Schenk himself even admitted during his deposition that doctors informed him that his hair loss could have been caused by stress *or genetics*.  (56.1 ¶ 76). Accordingly, medical testimony is required and any argument that Schenk – a lay witness – makes with respect to the alleged harassment causing his hair loss should be disregarded.  The Court should grant summary judgment on the portion of Schenk's claims that seek damages for hair loss.

## CONCLUSION

Based on the foregoing, Defendants respectfully requests that the Court grant their motion for partial summary judgment in its entirety and dismiss all claims – except Plaintiff Pape's Title VII, NYSHRL, and NYCHRL hostile work environment claims – as a matter of law, and order such other and further relief as the Court deems just and proper.

Date:   June 20, 2018
        New York, New York

s/Christine Hogan

Christine L. Hogan
Craig R. Benson
900 Third Avenue
New York, NY  10022.3298
212.583.9600

*Attorneys for Defendants*